**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA**

QBE INSURANCE CORPORATION,    )
                        )
       Plaintiff         )
                        )
vs.                      )
                        )     CIVIL ACTION NO. CV-08-364
ARTHUR C. WITHERINGTON AND PINA  )
D. WITHERINGTON, et al.         )
                        )
       Defendants.     )
                        )

<u>**BRIEF
OF
QBE INSURANCE CORPORATION
IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
AND
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**</u>

<u>**Introduction**</u>

This brief is submitted by QBE Insurance Corporation in support of its motion for judgment on the pleadings and its alternative motion for summary judgment. This is an action for a declaratory judgment that QBE Insurance Corporation does not owe a defense or indemnity to its insured, Pina and Arthur Witherington for a claim made against them by Hope Watkins for alleged discrimination in violation of the Fair Housing Act.  The primary issue presented is whether housing discrimination is an "accident" as the term is used in the Witheringtons' commercial general liability policy.

<u>**Undisputed Facts**</u>

**Parties and Jurisdiction**

This action arises out of a claim made by Hope I. Watkins against Arthur C. and Pina D. Witherington under the Federal Fair Housing Act, 42 U.S.C. §§ 601, *et seq.*, for discrimination of familial status. In response to Ms. Watkins' claim, the Secretary, United States Department of Housing and Urban Development, made a Charge of Discrimination against Arthur C.

{397877}

Witherington and Pina D. Witherington, also known as Pina H. Witherington, doing business as Pina's Mobile Home Park.

This action is within the Court's original jurisdiction under the provisions of 28 U.S.C. § 1332 in that it is a civil action between citizens of different states.

QBE Insurance Corporation is incorporated under the laws of the state of Delaware, with its principal place of business located in the city of New York in the state of New York.

Arthur C. Witherington and Pina D. Witherington are citizens of the state of Alabama, resident in Baldwin County, Alabama.

Hope I. Watkins and her minor children are citizens of the state of Alabama, resident in Baldwin County, Alabama.

Exhibit A to the Complaint is a true and correct copy of the Charge of Discrimination made by the Secretary, United States Department of Housing and Urban Development, describing the alleged discrimination that occurred in April 2006.

Exhibit B to the Complaint is a true and correct copy of the Determination of Reasonable Cause made by the Regional Director of the Office of Fair Housing and Equal Opportunity dated June 5, 2008.

On or about June 30, 2008, in response to the election of one of the parties, the chief administrative law judge terminated the administrative proceedings evidenced by the Charge of Discrimination.

On July 23, 2008, the United States of America filed suit against Arthur C. Witherington and Pina D. Witherington claiming relief arising from the same matters as alleged in the Charge of Discrimination. A true copy of that complaint is attached to the affidavit of William H. Hardie submitted in support of the motion.

A true and correct copy of policy number ANG18932-3 issued by QBE Insurance Corporation is attached to the Complaint as Exhibit C.

The Named Insured in policy number ANG18932-3 is identified in the declarations page on form ILDS0004(04-98) as "Pina's Mobile Home Park". The type of organization of Pina's Mobile Home Park is described on form QBGL-0139(11-99) as an "Individual". The name of the individual does not appear on the policy. The records of the office of the Secretary of State of Alabama do not reflect the existence of any corporation named "Pina's Mobile Home Park" or any reasonable variation of that name. The property on which the mobile home park is located is

2

owned by Arthur and Pina Witherington, husband and wife. Under the terms of Section II – Who Is An Insured of form CG0001(07-98), the individual insured's spouse would also be an insured, but only with respect to the conduct of the business. Therefore, both Pina and Arthur Witherington qualify as insureds under the policy for claims arising out of the operation of the mobile home park. The limits of the QBE Insurance policy are $1,000,000.

Mr. and Mrs. Witherington gave notice of the Charge of Discrimination to QBE Insurance Corporation and requested coverage for the claim under policy number ANG18932-3 and requested coverage for the Secretary's Charge of Discrimination.

In an action for declaratory relief, the amount in controversy is the value of the right to be protected or the extent of the injury to be prevented. *See Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983). When an insurer seeks a declaratory judgment regarding the coverage provided by an insurance policy, the value of the right to be protected is the insurance company's potential liability under the policy, plus potential attorneys' fees, penalties, statutory damages and punitive damages. *See St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998); *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 911-912 (5th 2002).

Questions of fact, such as how much money is actually at stake, are determined with reference to the date on which the complaint was filed. *See Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428 (1991) (jurisdiction is determined at the time the case is filed); *Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880 (5th Cir.2000); *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 162-163 (2d Cir. 2001); *Griffin v. Red Run Lodge, Inc.,* 610 F.2d 1198, 1204-05 (4th Cir.1979), *citing St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 290-93 (1938) (holding that plaintiff could not avoid federal jurisdiction by decreasing amount in controversy in amended complaint filed post-removal); 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3608, at 448-49 (2d ed. 1984 & Supp.2000).

On June 27, 2008, when this action was filed, Hope Watkins' claim against the Witheringtons was expressed in the Secretary's Charge of Discrimination.

The Charge of Discrimination alleged four violations of the Fair Housing Act and claimed "a $16,000 civil penalty against each Respondent for each violation of the Act". That totals $128,000. In addition, the Secretary claimed damages on behalf of Hope I. Watkins and her minor children Courtney Watkins, Marquis Watkins and Deontay Watkins for "economic

loss, including but not limited to, out-of-pocket expenses, and for emotional and physical distress, frustration, embarrassment, humiliation, inconvenience, and all other damages caused by the Respondents' discriminatory conduct". In addition, the issues of coverage include QBE Insurance Corporation's liability for attorney fees and expenses in defending Mr. & Mrs. Witherington from Ms. Watkins' claim. Consequently, the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

Venue properly is predicated on 28 U.S.C. § 1391 (a) inasmuch as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district, and the Defendants are subject to this Court's personal jurisdiction.

<u>Conclusions of Law</u>

**Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides:
> After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

Rule 7(a) provides, in effect, that the pleadings are closed upon the filing of a complaint and answer unless a counterclaim is interposed, in which event the filing of an answer to the counterclaim will mark the close of the pleadings. When a party fails to answer in a timely manner, the pleadings are closed as to that party for purposed of Rule 12(c) when a default has been entered. *See Poliquin v. Heckler,* 597 F. Supp. 1004, 1006 (D.Me.1984); *General Motors Corp. v. Blevins,* 144 F. Supp. 381, 389 (D.Colo.1956); *Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, 1992 WL 245847, 4 (E.D. Pa. 1992); *Tahara v. Matson Terminals, Inc.*, 2004 WL 3178065, 2 (D.Hawai'i 2004).

According to *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.* 914 F.2d 74, 76 (5th Cir. 1990):

> A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.

Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. *See Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1232-1233 (11th Cir. 2005); *Horsley v. Rivera* 292 F.3d 695, 700 (11th Cir. 2002); *Hawthorne v. Mac Adjustment, Inc.* 140 F.3d 1367, 1370 (11th Cir. 1998).

*The Witheringtons' Answer*

The Witheringtons have admitted the material allegations of the complaint, namely, the authenticity of the Charge of Discrimination attached to the complaint as Exhibit A, the Determination of Reasonable Cause attached as Exhibit B, and the policy attached as Exhibit C.

The Witheringtons' many denials are merely refusals to accept the characterizations in the complaint of the substance of those documents. For example, the Witheringtons deny that the amount in controversy exceeds $75,000 when the Charge of Discrimination alleged four violations of the Fair Housing Act against each Respondent and further claims "a $16,000 civil penalty against each Respondent for each violation of the Act." That statement constitutes a claim of $64,000 against each of the Witheringtons for a total of $128,000. The claim may, ultimately, prove unsupported by the evidence in the underlying case, but it does determine the amount in controversy. *See Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 911-912 (5th Cir. 2002); *Nationwide Mutual Insurance Co. v. Brown*, 387 F. Supp.2d 497, 498 (W.D. Pa. 2005). Therefore, despite the Witheringtons' denial, the amount in controversy for diversity jurisdiction has been established by the Charge of Discrimination.

In this case, the undisputed allegations of the complaint contain all the circumstances necessary to a resolution of the issues presented in the request for a declaratory judgment.

**Summary Judgment**

Rule 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The standard for granting summary judgment is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

As the Court of Appeals for the Eleventh Circuit explained in *Mindis Metals, Inc. v. Transportation Ins. Co.*, 209 F.3d 1296, 1298 (11th Cir. 2000):

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

In this case, there is no genuine issue for trial and the case may be decided as a matter of law.

**The Underlying Claim Against the Witheringtons**

This action arises out of a claim made by Hope I. Watkins against Arthur C. and Pina D. Witherington under the Federal Fair Housing Act (FHA) for discrimination of familial status.

In response to Ms. Watkins' claim, the Secretary, United States Department of Housing and Urban Development, has made a Charge of Discrimination against Arthur C. Witherington and Pina D. Witherington, also known as Pina H. Witherington, doing business a Pina's Mobile Home Park.

Under the FHA, 42 U.S.C. §§ 3601-3639, it is unlawful to make unavailable or deny a rental dwelling or to discriminate against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith to any person because of race, color, religion, sex, familial status, national origin or handicap. *See* 42 U.S.C. § 3604(a)-(b), (f).

There are three types of discrimination under the FHA: intentional discrimination sometimes referred to as "disparate treatment", the discriminatory affect of neutral policy sometimes referred to as "disparate impact," and failure to make reasonable accommodations for disabled persons. *See Assisted Living Assocs. v. Moorestown Township*, 996 F. Supp. 409, 434 (D.N.J.1998); *ReMed Recovery Care Centers v. Township of Willistown*, 36 F. Supp.2d 676, 683 (E.D. Pa. 1999).

A disparate-treatment claim requires proof of differential treatment of similarly situated persons or groups. *See Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995). To qualify as disparate treatment, the discrimination must be intentional. *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). A disparate-impact claim, on the other hand, challenges a facially neutral policy that actually or predictably results in discrimination. *See Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934 (2d Cir. 1988). To qualify as disparate impact, the plaintiff need not show that the policy was formulated with discriminatory intent. *See id.*

The Charge of Discrimination does not contain any claims based on disparate impact or failure to make reasonable accommodations. The only violations of the Fair Housing Act asserted in the Charge of Discrimination are for disparate treatment arising out of alleged discrimination based on familial status. These acts are intentional in nature and not "accidents" within the meaning of the commercial general liability policy.

6

**Establishing Coverage**

Under Alabama law, the insured has the burden of proving the existence of the policy and coverage for the claim, while the insurer has the burden of proof in asserting that coverage is barred by an exclusion under the terms of the policy. *See Parker Supply Co. v. Travelers Indem. Co.,* 588 F.2d 180, 182 (5th Cir. 1979) ("The burden of proving policy coverage in Alabama rests with the insured.") *Twin City Fire Insurance Co. v. Alfa Mutual Insurance Co.*, 817 So. 2d 687, 697 (Ala. 2001) ("[Insurer] has the burden of proof in asserting that a claim is excluded under its policy of insurance."); *Acceptance Insurance Co. v. Brown*, 832 So. 2d 1, 13 (Ala. 2001).

**Duty to Defend and Duty to Indemnify**

Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify. *Porterfield v. Audubon Indem. Co.,* 856 So.2d 789, 791-792 (Ala. 2002).

*Duty to Defend*

In *Hartford Casualty Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1009-1011 (Ala. 2005) (quoting *United States Fidelity & Guarantee Co. v. Armstrong,* 479 So.2d 1164, 1168 (Ala.1985)), the Supreme Court of Alabama explained:

> Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. . . . If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured.

In *Hartford Casualty Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1012 (Ala. 2005), the court also explained:

> Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action.

*Duty to Indemnify*

The insured's actual conduct rather than the allegations determine whether the insurer has a duty to indemnify. *City Realty, Inc. v. Continental Cas. Co.,* 623 So.2d 1039, 1047 (Ala.1993); *see Calhoun County Economic Dev. Council v. National Sec. Fire & Cas. Co.,* 808 So.2d 24 (Ala.2001).

When a court finds a duty to defend, it is often said that it is premature to address the issue of indemnification before judgment is entered against the insured. *See, e.g.*, *Townsend Ford, Inc. v. Auto-Owners Ins. Co.*, 656 So.2d 360, 364 (Ala. 1995).

However, where the two duties are inseparable, it is not premature to decide both the duty to indemnify and the duty to defend by declaratory judgment. See *State Farm Fire & Casualty Co. v. Davis*, 612 So.2d 458, 465 (Ala. 1993); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538-539 (7th Cir. 2006) ("a declaratory judgment that the insurer need not defend means that it need not indemnify either, whether or not the plaintiff makes good on his contentions"); *Northland Casualty Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1360 (M.D. Fla. 2001) (explaining that if the court can determine that the allegations in the complaint could under no circumstances trigger the duty to indemnify, then the court may decide the duty to indemnify prior to a conclusion on the merits of the underlying litigation); *IDC Const., LLC. v. Admiral Ins. Co.*, 339 F.Supp.2d 1342, 1347-1348 (S.D. Fla. 2004) (stating that if the allegations in the claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, then the insurer is not obligated to defend or indemnify the insured).

Under the circumstances in this case, the Court may declare that QBE Insurance Corporation has no duty to defend or indemnify the Witheringtons for the claims made against them by Hope Watkins or the government.

**The Policy**

Policy number ANG18932-3 is a commercial general liability (CGL) policy. It consists of the Common Policy Declarations page on form ILDS00(04-98) which incorporates forms IL0017(11-98); QBIL742-0490(12-99); IL0021(04-98); QBIL742-0489(12-99); QBGL0139(11-99); IL0190(03-97); IL0935(07-01); QBIL-0124(02-03); QBIL-0171(01-05). The Commercial General Liability Coverage Part Declarations on form QBGL-0139(11-99) also includes the legend, "See Register". Declarations (Continued) - Forms Register on form SY02(01-95) also lists the following forms also included in the policy: CG0001(07-98); CG0057(09-99); CG0062(12-02); CG0067(03-05); CG2147(07-98); CG2149(09-99); CG2160(09-98); CG2167(04-02); CG2175(12-02); CG2175(12-02); CG2187(05-04); CG2196(03-05); and CG2426(07-04). This policy was issued for the period from October 31, 2005 to October 31, 2006.

*Applicable Law*

The Alabama Insurance Code provides that all contracts of insurance for which an application is taken in Alabama are deemed to have been made within the state of Alabama and subject to the laws of Alabama. *See Ala. Code* § 27-14-22; *See also American Economy*

*Insurance Co. v. Thompson*, 643 So. 2d 1350 (Ala. 1994). In general, Alabama courts will apply the law of the state in which the policy was issued and delivered. *See, e.g., Cherokee Ins. Co., Inc. v. Sanches*, 975 So.2d 287, 293 (Ala. 2007); *Thompson v. Acceptance Insurance Co.*, 689 So. 2d 89, 92 (Ala. Civ. App. 1996); *Cincinnati Insurance Co. v. Girod*, 570 So. 2d 595, 597-598 (Ala. 1990). According to the declarations page, the insured is located in Daphne, Alabama, and the policy was delivered to the insured in Alabama. Therefore, Alabama law will apply to the interpretation of this policy.

*Policy Coverage*

The insuring clause of policy number ANG18932-3 is found in form CG0001(7/98), and it includes Coverage A and Coverage B. Coverage A protects the insured from liability for bodily injury or property damage only if they are caused by an accident. The general nature of Coverage A is restricted by a number of exclusions. Coverage B protects the insured from liability only for specific categories of conduct defined as "personal and advertising injury".

*Coverage A*

Coverage A is entitled "Bodily Injury and Property Damage Liability," and it insures against liability for damages because of "bodily injury" or "property damage". Section I.A.1.a of form CG0001(7/98), as amended by form CG0057(09-99), states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

*Occurrence*

QBE Insurance Corporation's duty to defend or indemnify the Witheringtons exists under Coverage A only if their alleged liability arises out of an "occurrence." The uncontested facts establish that the alleged liability does not arise out of an occurrence as the term is defined in the policy.

Section  I.A.1.b(1) & (2) of form CG0001(7/98) of the policy states that insurance under Coverage A applies only to bodily injury or property damage that is caused by an "occurrence". According to § V.13 of form CG0001(7/98), an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The word "accident" is not defined in the policy. However, in *Hartford Casualty Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1011 (Ala. 2005) (quoting *Black's Law Dictionary* 15 (7th ed. 1999)), the court defined the term "accident" in a CGL policy as follows:

> "An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated.". . . "The term ['accident'] has ... been variously defined as something unforeseen, unexpected, or unusual."

### *Discrimination as an Occurrence*

The Supreme Court of Alabama has not made a definitive statement whether disparate treatment discrimination based on race or familial status can constitute an accident within the meaning of a commercial general liability policy. The issue was raised in *Aetna Casualty & Surety Co. v. Mitchell Brothers, Inc.*, 814 So.2d 191 (Ala. 2001), and the trial court ruled that there was no coverage. However, the trial court awarded judgment against the insurer based on the "enhanced obligation of good faith" owed to an insured when an action is defended under a reservation of rights. The coverage issue was not appealed and the appellate decision is limited to the enhanced obligation issue. *See id.* at 194 n. 7.

In an analogous situation, the Supreme Court of Alabama in *Jackson County Hospital v. Alabama Hospital Association Trust*, 619 So.2d 1369, 1372 (Ala. 1993), held that an allegation of disparate treatment sexual discrimination necessarily involved intentional acts which were not covered under the definition of "occurrence". Therefore, based on the *Jackson County Hospital* case, the Supreme Court of Alabama would be expected to hold that disparate treatment discrimination based on race or familial status could not constitute an accident within the meaning of a commercial general liability policy.

Relying on the *Jackson County Hospital* case, Judge Thompson in the Middle District of Alabama found that there was no duty to defend a sexual harassment case because it did not allege an accident:

> Both the hostile environment claim and the quid pro quo claim are disparate treatment claims, which require that the plaintiff prove that the alleged wrongdoer acted intentionally. *Mitchell v. Jefferson County Board of Education*, 936 F.2d 539, 546 (11th Cir.1991); *Henson v. City of Dundee,* 682 F.2d 897, 903-04 (11th Cir.1982) (hostile environment claim is disparate treatment claim, requiring proof of intent); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1564 (11th Cir.1987) (quid pro quo sexual harassment claim is disparate treatment claim). Under Alabama law, because disparate treatment Title VII claims require that the plaintiff prove that the defendant intended to discriminate against her, such claims

do not constitute occurrences, as that term is defined in the insurance policies in
this case. *Jackson County Hosp. v. Alabama Hosp. Trust,* 619 So.2d 1369, 1372
(Ala.1993).

*Sphere Drake Ins., P.L.C. v. Shoney's, Inc.*, 923 F. Supp. 1481, 1492 (M.D. Ala. 1996); *see
Sidney Frank Importing v. Federal Ins. Co.*, 1999 WL 173263, at *6 (S.D.N.Y., Mar.26, 1999)
(no covered "occurrence" where underlying suit alleged claims of quid pro quo sexual
harassment by senior employees, despite further allegation of "negligent" hiring and training).

Other courts have held that disparate treatment discrimination based on race or familial
status is not covered under a commercial general liability policy. Under New York law, the
language included in the CGL policy's "Coverage A" does not extend to such intentional
discriminatory acts. *See Mary & Alice Ford Nursing Home v. Fireman's Ins. Co.*, 86 A.D.2d
736, 446 N.Y.S.2d 599, 601 (N.Y. App. Div.1982) (holding that there was no duty to indemnify,
and thus no duty to defend, an intentional discrimination claim under a coverage provision
comparable to "Coverage A" in policy ANG18932-3), *aff'd*, 57 N.Y.2d 656, 454 N.Y.S.2d 74,
439 N.E.2d 883 (1982); *Rosenberg Diamond Development Corp. v. Wausau Insurance Co.*, 326
F. Supp.2d 472, 476 (S.D.N.Y. 2005) (relying on the opinion of the N.Y. Superintendent of
Insurance that a claim of disparate treatment discrimination is not an occurrence), *aff'd*, 144 Fed.
Appx. 122 (2d Cir. 2005).

In *Northland Casualty Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1358 -1359 (M.D. Fla.
2001), the court stated:

> In the instant case, the policy defines "occurrence" as "an accident or a happening
> or event.".... Courts generally construe the definition of occurrence broadly to
> include both "accidental events" and "injuries or damage neither expected or
> intended from the standpoint of the insured." . . . In the context of discrimination,
> the greater weight of authority holds that allegations of intentional discrimination
> do not constitute an occurrence for the purpose of insurance coverage.

In *Hubel v. Madison Mut. Ins. Co.*, 2003 WL 21435624, at *1-2 (N.Y. Sup. Ct., May 16,
2003), the plaintiff in the underlying action had alleged that after the landlord read her rental
application that disclosed she had six children, he refused to rent the premises to her in violation
of the Fair Housing Act. The Court concluded that there could be no coverage: "disparate
treatment discrimination, by its very definition, results from intentional acts. Clearly, an
intentional act is not an 'accident'. Nor is it an 'occurrence' within the meaning of the applicable
commercial landlord policy...." Id. at *5.

In *Zahiri v. General Accident Insurance Co. of America*, 774 N.E.2d 685, 2002 WL 2021576, *3 (Mass. App. 2002) (unpublished), the court held that a claim of handicap discrimination was an allegation of volitional conduct that did not constitute an accident.

The Charge of Discrimination alleges facts that establish only a form of disparate treatment. Moreover, the Determination of Reasonable Cause shows that there are no background facts, omitted from the Charge of Discrimination, that involve any form of violation other than disparate treatment. Accordingly, there has not been an "occurrence" within the meaning of the policy.

Inasmuch as the existence of an "occurrence" is a precondition to coverage under Coverage A, QBE has no liability to defend or indemnify the Witheringtons under that coverage of the policy.

*Coverage B*

While Coverage B is not limited by the requirement of an "occurrence," Hope Watkins' claim does not fit within the specific categories of conduct defined as "personal and advertising injury".

Section I.B.a. of form CG0001(7/98) states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. . . .

"Personal and advertising injury" is defined in § V.14 of form CG0001(7/98) as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> 
> a.  False arrest, detention or imprisonment;
> b.  Malicious prosecution;
> c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
> d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e.  Oral or written publication of material that violates a person's right of privacy.
> f.  The use of another's advertising idea in your "advertisement"; or
> g.  Infringing on another's copyright, trade dress or slogan in your "advertisement".

The allegations of the Charge of Discrimination and the details in the Determination of Reasonable Cause confirm that Ms. Watkins was never a tenant or occupant of any property at

Pina's Mobile Home Park. Therefore, she would not have any claim that falls within the definition of "personal and advertising injury".

The Seventh Circuit had occasion to construe similar policy language under Wisconsin law as applied to a suit brought under the Fair Housing Act in *United States v. Security Management. Co., Inc.*, 96 F.3d 260, 264-67 (7th Cir.1996). The government alleged that the apartment owners and managers discriminated against black and Hmong persons. It based its proof on the use of "testers". The court concluded that "wrongful eviction" and "wrongful entry" were not implicated. *Id.* at 264. The court rejected the district court's reading of "right of private occupancy" to mean right to private occupancy. "The actual language of the policy ... involves the more narrow right 'of' private occupancy and all of the parties agree that the 'testers' did not hold a right of private occupancy at the time of the alleged discriminatory conduct." *Id.* at 266. Accordingly, the Court concluded that disparate treatment discrimination was not covered under Coverage B.

In *Rosenberg Diamond Development Corp. v. Wausau Insurance Co.*, 326 F. Supp.2d 472, 476 (S.D.N.Y. 2005), *aff'd*, 144 Fed. Appx. 122 (2d Cir. 2005), the court explained that "the definition in subparagraph c requires that the place of wrongful entry, wrongful eviction or invasion of the right of private occupancy be of a place 'that a person occupies.' As prospective tenants, the plaintiffs in the Fair Housing Suit could not meet that test." Consequently, there was no coverage under Coverage B.

In *Zahiri v. General Accident Insurance Co. of America*, 774 N.E.2d 685, 2002 WL 2021576, *3 (Mass App. 2002) (unpublished), the court held that a claim of handicap discrimination did not constitute "personal injury" within the meaning of Coverage B.

Accordingly, there is no coverage for the Witheringtons under Coverage B of the policy.

**Other Issues**

The absence of coverage under Coverage A or Coverage B ends the inquiry necessary to grant the declaratory relief sought by QBE Insurance Corporation. Nevertheless, there are other issues, based on equally undisputed facts, which bar or limit the Witheringtons' coverage under the policy for the Claim of Discrimination.

*Late Notice*

According to the affidavit of Cindy Dunn, QBE Insurance Corporation first received notice of Hope Watkins's claim on November 8, 2007.

13

The alleged acts of discrimination took place between February and April 28, 2006, at least nineteen months before the notice was given. Ms. Watkins filed her claim with the OFHEO on April 3, 2007, at least seven months before the notice was given. The Witheringtons were served with a copy of the complaint by Hope Watkins on June 1, 2007, at least five months before the notice was given.

Section IV of the Commercial General Liability coverage on form CG0001(7/98) contains the following language:

> 2.     Duties In The Event Of Occurrence, Offense, Claim Or Suit
>     a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .

More than five months elapsed between the date Pina's Mobile Home Park was served with a copy of the complaint and the date that notice of the claim was given to QBE Insurance Corporation.

The terms "as soon as practicable" and "immediately" as they are used in the requirement for notice have been generally construed to mean that notice must be given "within a reasonable time" in view of all the facts and circumstances of the case. *See, e.g., American Liberty Ins. Co. v. Soules*, 288 Ala. 163, 171, 258 So.2d 872, 879 (1972); *Pan American Fire & Casualty Co. v. DeKalb-Cherokee Counties Gas District*, 289 Ala. 206, 214, 266 So.2d 763, 771 (1972). Thus, the issue is whether the insurer was given notice within a reasonable time as a matter of law.

In deciding whether the notice meets the policy condition there are two factors to be considered; the reasonableness of the delay and the length and reason for the delay. *See Haston v. TransAmerica Insurance Services, Inc.*, 662 So. 2d 1138, 1141 (Ala. 1995).

Where an insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the court should as a matter of law hold that there has been a breach of the condition as to notice. *Southern Guaranty Ins. Co. v. Thomas*, 334 So.2d 879, 882-883 (Ala. 1976). The Supreme Court of Alabama has held many times that an insurer need not prove that it has been prejudiced by untimely notice of a claim by a policyholder in order to deny the claim based on late notice. *See, e.g., Midwest Employers Cas. Co. v. East Alabama Health Care*, 695 So.2d 1169, 1172 (Ala. 1997); *Correll v. Fireman's Fund Ins. Companies*, 529 So.2d 1006 (Ala.1988) (life underwriter's professional liability policy); *Big Three Motors, Inc. v. Employers Ins. Co. of Ala.*, 449 So.2d 1232 (Ala.1984) (general liability automobile policy).

Therefore, even if there were coverage available under the policy, it would be barred by late notice.

*Damages*

Both Coverage A and Coverage B limit the insurer's obligation under the policy to paying "damages".

The current complaint by the Attorney General claims "Civil Penalties."

Civil penalties are available in an action by the Attorney General under 42 U.S.C. § 3614 and 28 C.F.R. § 85.3. The statutory penalties are adjusted upward for inflation under the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410, § 5, 104 Stat. 891, note following 28 U.S.C. § 2461.

The policy does not define the term damages. Moreover, the fact that disparate treatment is not an "occurrence" means that court decisions are rare on the applicability of civil penalties to damages under a CGL policy for violations of the FHA. However, courts in other contexts have held that civil penalties do not constitute damages.

In *Crawford Laboratories, Inc. v. St. Paul Insurance Co.*, 715 N.E. 2d 653, 658 (Ill. App. 1999), the court held that civil penalties under an environmental law did not constitute damages under a CGL policy.

In *State Farm Fire & Casualty Co. v. Martinez*, 995 P. 2d 890, 895-896 (Kan. App. 2000), the court found a split of authority on the availability of coverage for civil penalties. Relying on public policy, the court denied coverage for civil penalties assessed under a consumer protection law.

In *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 944 F.2d 940, 947 (D.C. Cir. 1991), the court observed:

> [Compensation] is how "damages" is ordinarily understood. A fine or penalty, in contrast, is not understood to be dollar-for-dollar recompense. Rather, it is a pecuniary form of punishment for the commission of an act society finds repugnant and seeks to deter.

Therefore there would be no coverage for civil penalties, even if there were coverage in general for Ms. Watkins' claims.

The Ms. Watkins does not claim damages for property damage within the meaning of the policy. In addition to its claim for civil penalties, the only damages claimed on behalf of Hope

Watkins are for mental anguish, economic loss and, by implication, her attorney fees in prosecuting the claim under the FHA.

Of these, only mental anguish has been recognized as damages in the form of bodily injury under a CGL policy. *See Morrison Assurance Co. v. North American Reinsurance Corp.*, 588 F. Supp. 1324, 1327 (M.D. Ala. 1989). The remaining categories claimed in the Charge of Discrimination are not covered by the CGL policy.

Economic loss, unrelated to physical damage to tangible property, is not covered under the CGL policy. *See American States Ins. Co. v. Martin*, 662 So.2d 245, 248-249 (Ala. 1995); *Westfield Group v. Campisi*, 2006 WL 328415, *13 (W.D. Pa. February 10, 2006) (stating: "The cases are legion for the proposition that purely economic loss in the form of lost profits or diminution in value of intangible property is beyond the scope of coverage provided by a standard CGL policy.").

Similarly, the plaintiff's attorney fees in prosecuting the claim against the insured are not damages insured against in the CGL policy. *See Ellett Bros. v. United States Fidelity & Guaranty Co.*, 275 F. 3d 384, 388 (4th Cir. 2001); *Sullivan County, Tenn. v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir.1991); *Cutler-Orosi Unified School District v. Tulare County School Etc. Authority* 31 Cal.App.4th 617, 37 Cal.Rptr.2d 106 (1994).

*Exclusions from Coverage A*

The absence of an "occurrence" ends the inquiry concerning Coverage A. Nevertheless, there is an exclusion that would also bar coverage.

Exclusion I.A.2.a of policy form CG0001(7/98) provides the following exclusion from Coverage A:

> This insurance does not apply to:
> Expected Or Intended Injury
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

Alabama applies a subjective standard for determining whether an act was intended. *See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer,* 454 So. 2d 921, 925 (Ala.1984); *Jackson v. State Farm Fire & Cas. Co.*, 661 So.2d 232, 233 (Ala.1995); *State Farm Fire & Cas. Co. v. Chestang*, 952 So.2d 1101, 1104-1105 (Ala. 2006). Subjective intent can be inferred from the surrounding circumstances. *White v. Maryland Cas. Co.*, 589 So.2d 1294, 1296-1297 (Ala. 1991). Such intent is inferred in child sex abuse cases. *State Farm Fire and Cas. Co. v. Davis*,

612 So.2d 458, 464 (Ala. 1993). Similarly, it was inferred in *State Farm Fire & Cas. Co. v. King*, 851 F.2d 1369, 1371-1372 (11th Cir. 1988). It can be inferred in this case.

In *Commercial Union Insurance Co. v. Image Control Property Management, Inc.*, 918 F.Supp. 1165, 1169 (N.D. Ill. 1996), the court concluded that a quirk in Illinois law compelled it to assume that discrimination could be an occurrence. However, the court found that the claims were excluded because the injuries were expected within the meaning of Exclusion I.A.2.a: "[L]oss of the opportunity to own the unit, the loss of 'financial gain, independence, security and mental anguish, humiliation, embarrassment, degradation, and loss of civil rights,'. . . are all 'natural and probable result[s]' of the sort of intentional disability discrimination alleged in the . . . complaint." *Id.* at 1169 n3.

## The Counterclaim

The Witheringtons' answer to the complaint contains a counterclaim.

In their counterclaim the Witheringtons allege that:

> 5.      Their [the Witherington's] insurance agent brought in adjusters and tried to settle the claim. They were told by the insurance agent and the adjusters that they were covered under the insurance and that they would try to settle the matter before it went to trial.
>
>                    . . .
>
> 8.      Since the Court can exercise its discretion in accepting a declaratory action Counsel [for the Witheringtons] would respectfully request that the Court decline to take this case and to enter an order requiring QBE Insurance Corporation to continue its defense of the Witheringtons in the complaint heretofore filed.

The nature of the counterclaim is unclear. The prayer for relief is inconsistent in that it asks the court to decline to accept the case and then asks for an order that the plaintiff owes a defense to the Witheringtons.

Moreover, the basis for the requested relief is obscure. There is no claim for fraud in that there is no allegation of misrepresentation, reliance or damage. Yet, there are references to what QBE Insurance Corporation's "agents" told the Witheringtons about their coverage. Even if fraud were intended, the allegations do not meet the minimum particularity required by F.R. Civ. P. Rule 9(b). Therefore, the counterclaim seems to be merely an assertion, in effect, that the insurance company told us we had coverage and now it is saying we don't.

In general, insurance coverage cannot be created by waiver or estoppel. So, even if the insurance agent had mistakenly said that there was coverage, it would not prevent QBE Insurance Corporation from denying coverage. *See McGee v. Guardian Life Insurance Co.,* 472

17

So.2d 993 (Ala.1985); *Home Indemnity Co. v. Reed Equipment Co.,* 381 So.2d 45 (Ala.1980). These cases dealt with attempts to create liability for events and persons specifically excluded from coverage by the insurance policy itself. In *Home Indemnity,* the court stated:

> "[C]overage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written. *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co.,* 289 Ala. 719, 272 So.2d 232 (1972).

In *Woodall v. Alfa Mutual Insurance Co.*, 658 So.2d 369, 372 (Ala. 1995), the court stated:

> The doctrine of estoppel "is not available to bring within the coverage of a policy risks not covered by its terms or *risks expressly excluded therefrom.*" *Home Indemnity Co. v. Reed Equipment Co.,* 381 So.2d 45, 50-51 (Ala.1980) (emphasis added); *Johnson v. Allstate Ins. Co.,* 505 So.2d 362, 365 (Ala.1987); *McGee v. Guardian Life Insurance Co.,* 472 So.2d 993, 995-96 (Ala.1985). If a coverage provision or an exclusion is unambiguous, it is not subject to waiver or estoppel. *Henson v. Celtic Life Insurance Co.,* 621 So.2d 1268, 1276 (Ala.1993).

Most important is the fact that in November 2007 QBE Insurance Corporation obtained Mrs. Witherington's non-waiver agreement when its adjusters investigated the claim and in March 2008 QBE Insurance Corporation reserved its rights to deny coverage and commence a declaratory judgment when it tried to settle Ms. Watkins' claim. *See Shelby Steel Fabricators, Inc. v. United States Fid. & Guar. Ins. Co.,* 569 So.2d 309 (Ala.1990), in which the court found that U.S.F. & G. had provided sufficient notice of its reservation of rights by sending a "non-waiver" form to its insured.

**THEREFORE**, the Court may properly declare as follows:

A.     There has not been an "occurrence" within the meaning of the policy.

B.     The mental anguish claimed by Hope Watkins was expected or intended from the standpoint of the insured as excluded by Exclusion I.A.2.a.

C.     There is no claim for property damage within the definition of "property damage" in the policy.

D.     There is no claim within the definition of "personal and advertising injury" described in Coverage B of the policy.

E.     There is no coverage for damages not resulting from bodily injury or property damage as defined in the policy.

F.     There is no coverage for civil penalties.

G.     Notice of the claim was not timely given as required by the policy

     H.     QBE Insurance Corporation has no liability under policy number ANG18932-3 to defend or indemnify Arthur C. Witherington or Pina D. Witherington, also known as Pina H. Witherington, individually or doing business a Pina's Mobile Home Park; for any matters arising out of, or related to, the Charge of Discrimination.

                                       Respectfully submitted,

                                       _s/ William H. Hardie____
                                       William H. Hardie (HARDW2609)
                                       Attorney for QBE Insurance Corporation
                                       e-mail:  whh@johnstoneadams.com

OF COUNSEL:
JOHNSTONE, ADAMS, BAILEY, GORDON & HARRIS, L.L.C.
P. O. Box 1988
Mobile, Alabama  36633
Telephone:  (251) 432-7682
Facsimile:  (251) 432-0712

CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing has been served upon counsel for Arthur Witherington and Pina Witherington by e-filing via CM/ECF on this 31st day of July, 2008.

W. Donald Bolton, Jr.
W. Donald Bolton, Jr., P.C.
Post Office Box 1965
Foley, AL 36536
wdbolton@gulftel.com

                                       _s/William H. Hardie_____