IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


QBE INSURANCE CORPORATION,          :
                                    :
        Plaintiff,                  :
                                    :
v.                                  :          CIVIL ACTION 08-0364-M
                                    :
ARTHUR C. WITHERINGTON, et al., :
                                    :
        Defendants.                 :


MEMORANDUM OPINION AND ORDER


     This action comes before the Court on Plaintiff's Motion for

Summary Judgment[1] (Doc. 15).  Jurisdiction has been invoked in

this Court on the basis of diversity under 28 U.S.C. § 1332,

pursuant to 28 U.S.C. § 2201-2202 as a declaratory law action

(Doc. 1).  The parties filed written consent and this action has

been referred to the undersigned Magistrate Judge to conduct all

proceedings and order the entry of judgment in accordance with 28

U.S.C. § 636© and Fed.R.Civ.P. 73 (*see* Doc. 18).  After

consideration, Plaintiff's motion is **GRANTED.**

     The parties are as follows.  Plaintiff, QBE Insurance

Corporation, is incorporated under the laws of Delaware with its

principal place of business in New York State (*see* Doc. 1, ¶ 5).

---

[1]The Court notes that Plaintiff's pleading was captioned "Motion
for Judgment on the Pleadings and Alternative Motion for Summary
Judgment by QBE Insurance Corporation" (Doc. 15).  The Court
subsequently determined that the Motion would be treated as one for
summary judgment (Doc. 17).

Defendants Arthur C. Witherington and Pina D. Witherington are
residents of Daphne in Baldwin County, Alabama (Doc. 1, ¶ 6; Doc.
8, ¶ 6); the Witheringtons "own and operate a mobile home park
doing business as Pina's Mobile Home Park [which is] located in
Daphne, Alabama" (Doc. 23, ¶ 1).[2]  Defendant Hope Watkins, who is
Black, and her minor children, Courtney, Marquis, and Deontay,
reside in Baldwin County (*see* Doc. 1, ¶ 7; Doc. 1 [Exhibit A], p.
22, ¶ 7).

     The pertinent facts are as follows.  Plaintiff issued an
insurance policy for commercial general liability for Pina's MHP,
to run during the period October 31, 2005 to October 31, 2006
with a one million dollar limit (Doc. 1, Exhibit C; Doc. 16, p.
3).  In February 2006, Watkins became aware that she would no
longer be able to rent the lot on which her mobile home was
parked, so she went to Pina's MHP and enquired about renting a
lot there (Doc. 1 [Exhibit A], p. 22, ¶¶ 10-12).  Pina told her
that they had vacancies and that the monthly rental rate was $175
with an entrance fee of $300; "children were an additional charge
of $15.00 each per month and when they reached age 18 the amount
would be raised to $30.00 per month" (Doc. 1 [Exhibit A], p. 22,
¶ 13).  On April 19, 2007, Watkins filed a complaint with the
U.S. Department of Housing and Urban Development (hereinafter
*HUD*), asserting that the Witheringtons had violated the Fair

---

[2]Pina's Mobile Home Park will be referred to as *Pina's MHP*.

Housing Act (hereinafter *FHA*) by discriminating against her on the basis of familial status (*see* Doc. 1 [Exhibit A], p. 20).

On April 28, 2006, Watkins returned to Pina's MHP and talked with the Witheringtons who told her of the extra charges for children and that their rules allowed for only two children per mobile home; Watkins was told that they did—and that they did not—have a vacancy (Doc. 1 [Exhibit A], pp. 23-24, ¶¶ 18, 20-27). Watkins read Pina's MHP's rules and took an application, returning it to the Witheringtons later that same day (Doc. 1 [Exhibit A], p. 24, ¶¶ 29-31); when Watkins called several days later to ask about her application, Pina told her that she had too many children (Doc. 1 [Exhibit A], p. 24, ¶ 32).

A letter was issued, on June 1, 2007, to the Witheringtons, from HUD, informing them that they were being investigated for discriminatory practices in connection with the operation of Nina's MHP because of a complaint which had been filed by Watkins (Doc. 15 [Dunn Affidavit, Exhibit E], pp. 32-37).  The letter stated that no determination had yet been made as to the merit of the charges against them (Doc. 15 [Dunn Affidavit, Exhibit E], p. 34).  Nina responded to the letter (Doc. 15 [Dunn Affidavit, Exhibit F], pp. 38-40).  On September 13, HUD sent a follow-up letter requesting additional, specified information (Doc. 15 [Dunn Affidavit, Exhibit G], pp. 41-43) to which a Response was made (Doc. 15 [Dunn Affidavit, Exhibit H], pp. 44-46).  On

October 3, HUD issued a letter, stating that they needed to interview Ms. Witherington (Doc. 15 [Dunn Affidavit, Exhibit I], pp. 47-48).  On October 29, HUD sent a letter stating that the complaint had been amended, but that "no determination as to whether the complaint against [them had] merit" (Doc. 15 [Dunn Affidavit, Exhibit J], p. 50; *see generally* pp. 49-54).

On November 1, 2007, HUD issued a letter stating that a Conciliator had been assigned "to assist both [Watkins and the Witheringtons] in reaching an agreement that provides appropriate relief to the parties and serves the public interest" (Doc. 15 [Dunn Affidavit, Exhibit K], p. 56; *see generally* pp. 55-59).  On November 8, on the advice of an attorney, the Witheringtons contacted their insurance company of the HUD charge (Doc. 23, ¶ 9; *see also* Doc. 15 [Dunn Affidavit, Exhibit A], p. 14, ¶ 2 and pp. 19-22).  On March 13, 2008, Plaintiff's attorney issued a letter to the Witheringtons, stating that there were serious questions as to whether their insurance policy with QBE covered the claims made against it; QBE was, therefore, reserving "its right to rely on the terms of the policy and to deny liability to defendant or indemnify" them (Doc. 15 [Exhibit N], pp. 66-73).

On June 5, 2008, HUD issued a charge of discrimination against the Witheringtons for violating four provisions of the FHA under 42 U.S.C. § 3604(a-d) (Doc. 1 [Exhibit A], pp. 13-27). The Charge indicated that HUD would seek the following relief:

4

that the Witheringtons be enjoined from engaging in further

discriminatory practices and assessed a $16,000 civil penalty

against both Pina and Arthur for each of the four violations, and

that Watkins and her children be awarded monetary damages to

compensate "for their economic loss, including but not limited

to, out-of-pocket expenses, and for emotional and physical

distress, frustration, embarrassment, humiliation, inconvenience,

and all other damages caused by the [Witheringtons']

discriminatory conduct" (Doc. 1 [Exhibit A], p. 26).  On July 23,

2008, an action was brought in this Court by the United States,

on behalf of Watkins and her three children, against the

Witheringtons and Pina's MHP on the basis of the HUD Charge of

Discrimination.  *United States of America v. Arthur C.*

*Witherington, et al*, Civil Action 08-0431-KD-B (S.D. Ala.).

QBE filed a Complaint for Declaratory Judgment on June 23,

2008,[3] asking this Court to determine whether it was liable under

the insurance policy to defend or indemnify the Witheringtons

"for any matters arising out of, or related to, the Charge of

Discrimination" (Doc. 1).  The Witheringtons Answered the

Complaint and filed a Counterclaim against the Plaintiff in which

they request this Court to "decline to take this case and to

enter an order requiring QBE Insurance Corporation to continue

---

[3]The Court notes that this pre-dates the filing of the action by
the United States against the Witheringtons by a month.

its defense of the Witheringtons in the [HUD] complaint heretofore filed" (*see* Doc. 8, pp. 4-5). Plaintiff subsequently filed this Motion for Summary Judgment (Docs. 15-16) to which the Defendants[4] have Responded[5] (Doc. 23) and Plaintiff has Replied (Doc. 24).

The Court notes, as a preliminary matter, that jurisdiction has been invoked under 28 U.S.C. § 1332 (Doc. 1). In a diversity action, this court has jurisdiction over actions between citizens of different states so long as all plaintiffs are diverse from all defendants, *Strawbridge v. Curtiss*, 7 U.S. 267 (1806), and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(b). Plaintiff is incorporated under the laws of Delaware with its principal place of business in New York State; the Defendants all reside in Alabama. As the HUD charge seeks a civil penalty of $16,000 each against both Pina and Arthur for each of four violations, the $75,000 threshold is satisfied. The Court finds that *Strawbridge* has been satisfied.

The Rules of Civil Procedure, in discussing summary judgment, state that

---

[4]As a default was entered against Defendant Watkins for "failure to plead or otherwise defend" this action (Doc. 14), the Court will refer to the Witheringtons as the Defendants.

[5]The Court notes that the Witheringtons filed a Motion to Continue the time by which it could respond to Plaintiff's Motion for Summary Judgment (Doc. 21) to which Plaintiff filed a Response (Doc. 22). Noting that Defendants have already Responded, and finding that Defendants have failed to demonstrate the need to continue these deadlines, Defendant's Motion is **DENIED** (Doc. 21).

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477

U.S. 317, 325-27 (1986).  The Court further bears in mind, with

regard to the motion for summary judgment, that "there is no

issue for trial unless there is sufficient evidence favoring the

non-moving party for a jury to return a verdict for that party.

If the evidence is merely colorable or is not significantly

probative, summary judgment may be granted."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

Summary judgment may be granted against a party who fails to

establish the existence of an element essential to that party's

case and on which that party will bear the burden of proof at

trial.  *Id.*

Plaintiff brings this action for the Court to determine

whether QBE has a duty to defend and indemnify Defendants in the

action HUD has brought against it (Doc. 1).  In filing the Motion

for Summary Judgment, Plaintiff requests the Court to answer the

question in the negative (Docs. 15-16).

The Court notes, initially, that "Congress amended the Fair

7

Housing Act in 1988 to include a prohibition against housing discrimination based on familial status.  42 U.S.C. § 3604." *Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.*, 3 F.3d 1472, 1474 (11th Cir. 1993), *cert. denied*, 513 U.S. 808 (1994). "'Familial status' means one or more individuals (who have not attained the age of 18 years) being domiciled with a parent or another person having legal custody of such individual or individuals."  42 U.S.C. § 3602(k)(1).  "To prove familial-status discrimination, Plaintiff must show that Defendants discriminated against her 'in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of familial status.'"  *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1264 (11th Cir. 2002).

    In this action, the parties agree that an insurance policy for commercial general liability was issued from QBE for Pina's MHP, to run during the period of October 31, 2005 to October 31, 2006 which had a one million dollar policy limit (Doc. 1 [Exhibit C], pp. 46-88).  Because the application for insurance was made in Alabama (Doc. 1 [Exhibit C], p. 47), the contract is deemed to have been made in Alabama and the laws of this State are applicable in interpreting it.  Ala. Code § 27-14-22 (1975); *see also Cherokee Ins. Co., Inc. V. Sanches*, 975 So.2d 287, 293 (Ala. 2007).  In *Tanner v. State Farm Fire & Casualty Co.*, 874 So.2d 1058 (Ala. 2003), the Alabama Supreme Court "summarize[d] the law for determining the existence or nonexistence of an insurer's

duty to defend:"

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence.  If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend.  The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence.  If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence.

*Tanner*, 874 So.2d at 1065 (citations omitted).  In making a determination as to QBE's duty to defend the Witheringtons, the Court uses a two-prong analysis.  "First we must determine whether the facts alleged . . . state an 'occurrence' within the meaning of the policy.  Secondly, and presupposing a negative answer to the first inquiry, we must determine whether the 'facts which may be proved by admissible evidence' state an 'occurrence.'"  *Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1011 (Ala. 2005).  The Court will now examine the Insurance Contract in dispute.

9

Plaintiff states at the outset that there are two potential areas of coverage under the Insurance Contract (Doc. 16, p. 9). Specifically, QBE states that "Coverage A protects the insured from liability for bodily injury or property damage only if they are caused by an accident . . . [while] Coverage B protects the insured from liability only for specific categories of conduct defined as 'personal and advertising injury'" (Doc. 16, p. 9). The Court will address Coverage A protection first.

Under the terms of the policy, QBE states that it will pay for "bodily injury"[6] covered by the insurance contract and has the "duty to defend the insured against any 'suit' seeking those damages" which are covered (Policy, § I.A.1.a. [p. 62]).[7] The "injury" must be "caused by an 'occurrence' that takes place in the 'coverage territory'" during the "coverage period" (Policy, § I.A.1.b.(1, 2) [p. 62]).[8] "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (Policy, § V.13. [p. 73]). The

_____

[6]"'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" (Policy, § V.3. [p. 71]).

[7]The Insurance Contract which is in dispute in this action is found at Doc. 1, Exhibit C, pp. 46-88. When referring specifically to the Policy, the Court will use this shorthand method of citation to make it easier to locate the passage being discussed.

[8]Though defined in the Insurance Contract, the Court will not set out the definition of "coverage territory" (Policy, § V.4. [pp. 71-72]) as there is no apparent dispute regarding this term. The Court also notes that there is no dispute that this Contract is the relevant Policy for consideration.

Contract does not define *accident* (*see* Policy, § V. [pp. 71-74]).
The Alabama Supreme Court has supplied a definition, however:

> The term "accident" is not defined in the
> policy, but it is a commonly used word in the
> legal profession.  In *St. Paul Fire & Marine
> Insurance. Co. v. Christiansen Marine, Inc.*,
> 893 So.2d 1124, 1136 (Ala. 2004), this Court
> applied the following definition of
> "accident" found in *Black's Law Dictionary* 15
> (7th ed. 1999):  "An unintended and
> unforeseen injurious occurrence; something
> that does not occur in the usual course of
> events or that could be reasonably
> anticipated."  In *United States Fidelity &
> Guaranty Co. v. Bonitz Insulation Co. of
> Alabama*, 424 So.2d 569, 572 (Ala. 1982), this
> Court, citing *Employers Insurance Co. of
> Alabama v. Rives*, 264 Ala. 310, 87 So.2d 653
> (1955), stated:  "The term ['accident'] has .
> . . been variously defined as something
> unforeseen, unexpected, or unusual."

*Hartford Casualty Insurance Co.*, 928 So.2d at 1011.[9]  The
Insurance Contract specifically excludes "'[b]odily injury' or
'property damage' expected or intended from the standpoint of the
insured" (Policy, § I.A.2.a. [p. 62]).

Returning to the HUD complaint, the Court notes that the
specific language setting out the charges against the
Witheringtons states as follows:

45.  By refusing to rent a residential

---

[9]This case is one where a policy owner brought a declaratory
action against its commercial general liability insurer for a
determination as to whether the insurer owed a duty to defend and
indemnify.

> mobile home lot to Complainant because of her
> familial status, Respondents violated 42
> U.S.C. § 3604(a).
>          46.  By requiring Complainant and
> families with children to pay extra fees for
> children, Respondents violated 42 U.S.C. §
> 3604(b).
>          47.  By making and publishing statements
> to Complainant and others, regarding a "two
> children per family" limitation and extra
> fees charged for children based on their age,
> with respect to the rental of a residential
> mobile home lot, Respondents violated 42
> U.S.C. § 3604©.
>          48.  By representing to Complainant that
> because of her children a residential mobile
> home lot was unavailable for rental when such
> lot was in fact available, Respondents
> violated 42 U.S.C. § 3604(d).

(Doc. 1 [Exhibit A], p. 26, ¶¶ 45-48).  The Court understands

each of these charges to assert an intentional act on the part of

the Defendants.  The Court finds that these intentional acts fall

within the Contract Insurance language which excludes coverage

for "'[b]odily injury' . . . expected or intended from the

standpoint of the insured" (Policy, § I.A.2.a. [p. 62]).  The

Witheringtons have not provided the Court any explanation as to

how these acts could be considered anything but intentional (*see*

Doc. 23); the Court has come up with no theory on its own.

       Therefore, the Court holds that the Insurance Contract

between Plaintiff and the Defendants specifically excludes

coverage, under Section A, for "bodily injury" because of

intentional acts committed by the Witheringtons.  The Court finds

this ruling to be consistent with the holdings of *Jackson County*

*Hospital v. Alabama Hospital Ass'n Trust*, 619 So.2d 1369, 1372 (Ala. 1993) (hospital association trust had no duty to defend hospital under general liability insurance policy on sex discrimination claims as policy only covered injuries arising from unintentional acts) and *Sphere Drake Ins., P.L.C., Shoney's Inc.*, 923 F.Supp. 1481, 1492 (M.D. Ala. 1996) (liability insurer had no duty to defend employees for hostile environment and quid pro quo sexual harassment claims as proof of those claims require intentional acts).

The Court will now explore the Coverage B protection portion of the Insurance Contract. Under the terms of the Contract, QBE "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages" (Policy § I.B.1.a. [p. 66]). The Policy definition of "personal and advertising injury" is as follows:

> "Personal and advertising injury" means injury including consequential "bodily injury," arising out of one or more of the following offenses:
> a.  False arrest, detention or imprison-
>     ment;
> b.  Malicious prosecution;
> c.  The wrongful eviction from, wrongful
>     entry into, or invasion of the
>     right of private occupancy of a
>     room, dwelling or premises that a
>     person occupies, committed by or on
>     behalf of its owners, landlord or

```
                    lessor;
            d.   Oral or written publication of
                 material that slanders or libels a
                 person or organization or dispar-
                 ages a person's or organization's
                 goods, products or services;
            e.   Oral or written publication of
                 material that violates a person's
                 right of privacy;
            f.   The use of another's advertising
                 idea in your "advertisement"; or
            g.   Infringing upon another's copyright,
                 trade dress or slogan in your
                 "advertisement".
```

(Policy § V.14. [p. 73]).

Plaintiff has argued, however, that this section of the Policy is not applicable because "Watkins was never a tenant or occupant of any property at Pina's Mobile Home Park" (Doc. 16, pp. 12-13).  Defendants have offered no argument as to why this coverage would be applicable (*see* Doc. 23), so the Court finds QBE's argument persuasive.  The Court holds that the Insurance Contract between Plaintiff and the Defendants provides no applicable coverage, under Section B, to the Witheringtons which would obligate QBE to defend the HUD Complaint brought against the Defendants.

Therefore, the Court finds that, under *Tanner*, there has been no showing that an "occurrence" has taken place pursuant to the Insurance Contract.  The Court finds that neither the HUD Complaint nor the evidence brought forth by the Witheringtons has demonstrated that Plaintiff is obligated to assume Defendants'

14

defense of the HUD action against them.

Plaintiff has also asked this Court to find that Defendants provided QBE with notice of the Watkins' claim too late to obligate it, under the Insurance Contract, to defend or indemnify them (Doc. 16, pp. 13-15). Because of the Court's determinations herein that the Insurance Contract provides no obligation by QBE to defend Defendants in the HUD complaint, the Court finds it unnecessary—and, therefore, declines—to reach a decision as to the lateness of the notice.

Plaintiff also seeks a ruling on Defendants' Counterclaim (Doc. 16, pp. 17-18). That Counterclaim states as follows:

> 5.   Their insurance agent brought in adjusters and tried to settle the claim. They were told by the insurance agent and the adjusters that they were covered under the insurance and that they would try to settle the matter before it went to trial.
>
> ***
>
> 8.   Since the Court can exercise its discretion in accepting a declaratory action Counsel would respectfully request that the Court decline to take this case and to enter an order requiring QBE Insurance Corporation to continue its defense of the Witheringtons in the complaint heretofore filed.

(Doc. 8, pp. 4-5). For the reasoning set out earlier, the Court **DENIES** Defendants' request to require "QBE Insurance Corporation to continue its defense of the Witheringtons."

Furthermore, to the extent Defendants attempt to raise a

claim of fraud in ¶ 5, the Court finds that the claim has not been pled with particularity as required in Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). Additionally, to the extent that ¶ 5 attempts to raise a claim that insurance coverage was created or extended by QBE's agents, the Court notes that, under Alabama law, "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written." *Home Indemnity Co. v. Reed Equipment Co., Inc.*, 381 So.2d 45, 51 (Ala. 1980) (citing *Aetna Ins. Co. v. Pete Wilson Roofing & Heat. Co., Inc.*, 272 So.2d 232 (1972)).

In summary, the Court finds that Plaintiff has demonstrated that the Insurance Contract provides no coverage for the Witheringtons with regard to the Watkins claim with the HUD. Therefore, the Court finds that QBE has no duty to defend Defendants in the action that HUD has brought against them. Though Defendants have repeatedly asserted that there are material issue of fact in dispute, the Witheringtons have failed to bring those facts to the Court's attention. Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED** (Doc. 15). The Court further finds that Defendants' Counterclaim requesting that the Court order QBE to defend them is due to be **DENIED** (Doc.

8).  It is further **ORDERED** that this action be **DISMISSED**.

Judgment will be entered by separate Order.

DONE this 16th day of October, 2008.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE